**No. 22-55930**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

LORI MYERS, individually and on behalf of a class of similarly situated persons,

*Plaintiff-Appellant*,

v.

MARS WRIGLEY CONFECTIONERY US, LLC AND THE QUAKER OATS COMPANY

*Defendants-Appellees*.

On Appeal from the District Court for the Central District of California, Honorable John W. Holcomb Presiding, Case No. 5:20-cv-00335-JWH-SHK

---

## APPELLANT'S OPENING BRIEF

---

Helen Zeldes
Joshua Fields
Aya Dardari
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES, LLP
501 W. Broadway, Suite 800
San Diego, CA 92101
(619) 400-4990

Paul L. Hoffman
John Washington
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES, LLP
200 Pier Avenue, #226
Hermosa Beach, CA 90245
(310) 396-0731

Catherine Sweetser
Tessa Baizer
UCLA LAW CLINICS
385 Charles E. Young Dr.
Los Angeles, CA 90095

Attorneys for *Plaintiffs-Appellants*.

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ............................................................1

ISSUES PRESENTED............................................................................1

STATUTORY AUTHORITIES ..............................................................1

STATEMENT OF FACTS ....................................................................1

STATEMENT OF THE CASE................................................................4

SUMMARY OF ARGUMENT ...............................................................5

STANDARD OF REVIEW .....................................................................7

ARGUMENT ..........................................................................................8

I.    A Statement Need Not Be Factually False to be Misleading. ......................8

II.   The Placement of the Misrepresentation on the Label Deceived Reasonable Consumers Like Ms. Myers Into Believing that the Dove Dark Chocolate Products Contained Cocoa Traceable to Certified Farms, and Differed from Mars's Other Products. ....................................11

    A.   The District Court Erred in Failing to Take into Account that the Difference in Labeling Would Deceive a Reasonable Consumer into Thinking that Dove Dark Chocolate Products Materially Differed From Mars's Other Chocolates by Containing Certified Cocoa.............12

    B.   The Labeling of These Products with "Certified Cocoa, Traceable from the Farms to Our Factory" Misled Reasonable Consumers Into Thinking the Products Contained Ingredients They Did Not Contain. ..15

III.  The Allegations Were Sufficiently Specific to Satisfy the Plausibility Standard. ...........................................................................................18

    A.   The Correct Standard on A Motion to Dismiss is Plausibility of the Allegations. .................................................................................20

    B.   Ms. Myers Adequately Alleged that the Affirmative Misrepresentation Misled Her and Would Mislead a Reasonable Consumer. ....................21

    C.   Specific Evidence Supporting Plaintiff's Claims is Not Required at the Pleading Stage. .........................................................................24

CONCLUSION .......................................................................................26

i

# TABLE OF AUTHORITIES

*Federal Cases*                                                           *Page(s)*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................... 20

*Bailey v. Rite Aid Corp., No. 18-CV-06926-YGR*,
   2019 WL 4260394 (N.D. Cal. Sept. 9, 2019) ....................................... 13-14, 14

*Bell Atlantic Corp v. Twombly*,
   550 U.S. 544 (2007) ........................................... 20

*Bell v. Publix Super Markets, Inc.*,
   982 F.3d 468 (7th Cir. 2020) ............................................... 21

*Bohac v. Gen. Mills, Inc., No. 12–cv–05280–WHO*,
   2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) ................................. 17

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ........................................... 7, 10

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ............................................... 21

*Gardner v. StarKist Co.*,
   418 F. Supp. 3d 443 (N.D. Cal. 2019) ..................................... 22, 23

*Garrison v. Whole Foods Mkt. Grp., Inc., Case No. 13–cv–05222–VC*,
   2014 WL 2451290 (N.D. Cal. June 2, 2014) .................................. 17

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal 2018) ............................................ 24

*Ham v. Hain Celestial Group, Inc.*,
   70 F. Supp. 3d 1188 (N.D. Cal. 2014) ..................................... 17, 20

*Hitt v. Arizona Beverage Co., LLC, No. 08cv809 WQH* (POR),
   2009 WL 449190 (S.D. Cal. Feb. 4, 2009) .................................. 20

*Jou v. Kimberly-Clark Corp., No. C-13-03075 JSC*,
   2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ................................ 14

*Koh v. S.C. Johnson & Son, Inc., No. C-09-00927 RMW*,
   2010 WL 94265 (N.D. Cal. January 5, 2010) ................................ 23

# TABLE OF AUTHORITIES – CONT'D

*Federal Cases* - Continued                                                                 *Page(s)*

*Lambert v. Nutraceutical Corp.*,
   2020 U.S. Dist. LEXIS 6391 (C.D. Cal. Jan. 8, 2020) ...................................... 24

*Lytle v. Nutramax Labs., Inc., Case No. ED CV*
   19-0835 FMO (SPx), 2022 WL 1600047 (C.D. Cal. May 6, 2022) ................ 25

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ........................................................... 6, 9, 10, 19

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ................................................................................ 7

*Orshan v. Apple Inc.*,
   804 F. App'x 675 (9th Cir. 2020) ..................................................................... 20

*Peterson v. Mazda Motor of America, Inc.*,
   44 F.Supp.3d 965- 69 (C.D. Cal. 2014) ............................................................. 8

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ................................................................. 18, 19, 20

*Schippell v. Johnson & Johnson Consumer Inc.*,
   2023 U.S. Dist. LEXIS 139184 (C.D. Cal. Aug. 7, 2023) .......................... 7, 19

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
   642 F. Supp. 2d 957 (N.D. Cal. 2008) ............................................................. 25

*Spangler v. Nat'l College of Tech. Instruction, No. 14-cv-3005 DMS*
   (RBB), 2016 WL 11772280 (S.D. Cal. Oct. 24, 2016) .................................... 25

*Surzyn v. Diamond Foods, Inc., No: C 14–0136 SBA*,
   2014 WL 2212216 (N.D. Cal. May 28, 2014) ................................................. 17

*U.S. ex rel. Lee v. Smithkline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir. 2001) ............................................................................ 8

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................... *passim*

# TABLE OF AUTHORITIES – CONT'D

_State Cases_

*Colgan v. Leatherman Tool Grp., Inc.*,
  135 Cal. App. 4th 663 (Cal. Ct. App. 2006) ................................... 15, 16, 24, 25

*Day v. AT&T Corp.*,
  63 Cal. App. 4th 325–333 (Cal. Ct. App. 1998) ................................................ 9

*Kasky v. Nike, Inc.*,
  27 Cal.4th 939 (2002) .................................................................................. 8, 9, 12

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 ................................................................................................... 12

*Lavie v. Proctor & Gamble Co.*,
  105 Cal. App. 4th 496 (Cal. Ct. App. 2003) .................................................... 15

*Linear Technology Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (Cal. Ct. App. 2007) ............................................... 20-21

*Nagel v. Twin Labs., Inc.*,
  109 Cal. App. 4th 39 (Cal. Ct. App. 2003) ..................................................... 8-9

*People v. McKale*,
  25 Cal.3d 626 (1979) ........................................................................................ 21

*Salazar v. Walmart, Inc.*,
  83 Cal. App. 5th 561 (Cal Ct. App. 2022) ................................................. 13, 21

*Skinner v. Ken's Foods, Inc.*,
  53 Cal. App. 5th 938 (Cal. Ct. App. 2020) ...................................................15, 16

_Federal Statutes_                                                                          _Page(s)_

28 U.S.C. § 1332 ................................................................................................. 1, 2

_State Statutes_

Cal. Bus. & Prof. Code § 17200 et seq. ................................................................. 4

California Civil Code §§ 1750 et seq. ................................................................. 4, 5

iv

## TABLE OF AUTHORITIES – CONT'D

*Other*                                                                     *Page(s)*

Federal Rule of Civil Procedure 12(b)(6) ........................................................... 6, 7

## JURISDICTIONAL STATEMENT

This case was properly before the district court under 28 U.S.C. § 1332, due to diversity jurisdiction. Plaintiff timely filed her notice of appeal from the dismissal of her claims against Mars Wrigley Confectionary US, LLC (hereinafter, "Mars") within 30 days of when the case was dismissed. ER 286-87.

## ISSUES PRESENTED

1. Whether the district court erred in finding that the statement "We buy cocoa from Rainforest Alliance certified farms, traceable from the farms into our factory" was not misleading as a matter of law because it was "technically true?"

2. Whether the district court erred by failing to examine the context of the packaging, including that no other Mars products were labeled in that way?

3. Whether the district court misapplied the *Iqbal* standard when it found that no reasonable consumer would be misled by the statements at issue?

## STATUTORY AUTHORITIES

All relevant statutory authorities appear in the Addendum to this brief.

## STATEMENT OF FACTS

Forced labor and child labor are widespread on cocoa farms in Côte d'Ivoire and Ghana. Over two million children are employed there in the Worst Forms of Child Labor, including trafficking, slavery, and exposure to toxic chemicals and

1

hazardous tools. ER 137, 141-42 (SAC ¶¶ 2, 19-20). Over half of these children are involved in hazardous work. ER 142 (SAC ¶ 20). Many are unable to attend school. *Id.* Millions of children have been sold or trafficked, forced to work in abominable conditions, received no pay for their work, and were beaten if they attempted to escape. ER 142-43 (SAC ¶ 22).

Mars sources the majority of cocoa beans used to make its chocolate products from Ghana and Côte d'Ivoire. ER 137 (SAC ¶ 2). Approximately 80% of cocoa produced in Côte d'Ivoire cannot be traced to any specific farm, making it impossible to discern whether the vast majority of cocoa sourced from the country was harvested with forced labor and/or child labor. ER 143 (SAC ¶ 25). Although Mars has made verbal commitments to eliminate forced labor and child labor in its supply chain, only 24% of the cocoa beans that Mars purchases are traceable to farms. ER 137, 148-49, 151 (SAC ¶¶ 2, 43, 44, 51); *see also* ER 120 (Mars Mot. To Dismiss at 12:8-16). The reality is that child labor has increased, not decreased, since Mars has made its public-facing commitments. ER 137 (SAC ¶ 2). Today's consumer is interested in purchasing sustainable and fair-trade goods. Nearly half of consumers want more socially responsible products on the market. ER 138-39 (SAC ¶ 6).

Plaintiff Lori Myers ("Myers") is such a consumer. She sued Mars ("Defendant") in 2020 based on misleading statements regarding its cocoa supply

chain on the packaging for its Dove Dark Chocolate products. ER 139 (SAC ¶¶ 9-10). As Myers alleged, Mars purposely labeled its Dove Dark Chocolate products to make them appear as if they contained certified chocolate, unlike its other products. In particular, Mars placed the statement "We buy cocoa from Rainforest Alliance Certified™ farms, traceable from the farms into our factory" on the Dove Dark Chocolate products, but not on other products. ER 147, 149 (SAC ¶¶ 42, 45-6). The Rainforest Alliance certification represents that it stands for ethical and sustainable farming, including better labor conditions and care for the environment. ER 147 (SAC ¶ 42). In fact, the cocoa in Mars's Dove Dark Chocolate products is not traceable once it arrives at the factory, and thus the cocoa in the products is untraceable. The intermingling of certified and uncertified beans in Defendant's factory makes it impossible to tell which of its products are made with cocoa beans from Rainforest Alliance Certified farms. ER 138, 149-150 (SAC ¶¶ 4, 45-48).

Mars is unable to trace the cocoa in *any* of its products and admits that only 24% of the cocoa used in its products overall is certified. ER 120 (Mars Mot. to Dismiss at 12:12-16). Over 75% of its cocoa is not from certified farms audited for child labor and forced labor practices. Thus, it is possible and even more likely than not that many of the Dove Dark Chocolate products did not contain any certified cocoa. What is undisputed is that the Dove Dark Chocolate products,

3

although labeled and priced differently, contain no different mix of cocoa than other Mars products such as M&Ms. ER 120, 149 (Mars Mot. to Dismiss at 12:8-16, SAC ¶¶ 44-48).

## STATEMENT OF THE CASE

Plaintiff Myers brought claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (hereinafter "UCL"), alleging that Defendant's unfair practices deceived consumers, and under the Consumers Legal Remedies Act, California Civil Code §§ 1750 et seq. (hereinafter "CLRA"), alleging Defendant engaged in "unfair or deceptive acts." ER 139, 154-158 (SAC ¶¶ 10, 69-89). The case was brought as a class action on behalf of all consumers similarly misled. ER 152 (SAC ¶ 59). Defendant Mars filed a motion to dismiss. ER 224-257. The district court dismissed the claims with leave to amend, ER 17-31. Myers then filed a Second Amended Complaint, clarifying the theory around affirmative misrepresentation by Mars. ER 136-159. Mars filed a second motion to dismiss as to that complaint. ER 101-135.

The district court dismissed Myers's claims that the affirmative misrepresentation "We buy cocoa from Rainforest Alliance Certified™ farms, traceable from the farms into our factory" on the Dove Dark Chocolate products, but not on other products, would mislead the reasonable consumer. ER 9-10. The district court based the dismissal on its finding that the statement was "carefully

4

worded" and "technically true." ER 10. The district court then proceeded to find that Myers needed to allege additional evidence at the complaint stage that a reasonable consumer would not take from the statement "traceable from the farms into the factories" or from the separate labeling of a specific product line generally advertised as fair trade that the product itself was traceable or that any certified chocolate at all was used in the products. *Id*. The district court placed the burden on Myers to demonstrate within the complaint that her "mistaken assumption that the product contained certified beans" was reasonable, beyond the allegations that she herself had been misled and that a reasonable consumer would be misled, and dismissed Myers's claims prior to discovery. *Id.*

## SUMMARY OF ARGUMENT

First, the district court erred when it evaluated the challenged statements on Mars's packaging and found that because they were "technically true," they were not deceiving as a matter of law. ER 10. Under California law, a factually true statement can nonetheless violate the CLRA if it is misleading to the reasonable consumer. *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008). Thus, it was error to hold that these "carefully worded" affirmative misrepresentations were not deceiving because they were technically true.

Second, the district court also erred in failing to evaluate or even consider the placement and context of the challenged statements. Mars placed the statement

"We buy cocoa from Rainforest Alliance certified farms, traceable from the farms into our factory," on certain premium products in the Dove Dark Chocolate line, but not on other Mars products, which deceived consumers into thinking that the Dove Dark Chocolate products were a different and more ethical product that contained traceable and certified cocoa. ER 149 (SAC ¶ 46). The district court should have found that plaintiffs alleged a plausible affirmative misrepresentation because the statement implied that the products contained cocoa that was traceable to certified farms. This allegation is plausible and courts have held that placing such statements in a specific context or on certain products but not others can amount to a deceptive practice when the products are in fact the same. *Moore v. Mars Petcare US, Inc.,* 966 F.3d 1007, 1019 (9th Cir. 2020) (requiring a prescription for certain food could be plausibly proven to be deceptive when it contains the same ingredients as the non-prescription food).

Third, the district court erred in finding as a matter of law that Ms. Myers's assumption that the cocoa was traceable was not reasonable. "Whether a business practice is deceptive will usually be a question of fact not appropriate for decision on" a Rule 12(b)(6) motion to dismiss. *Williams,* 552 F.3d at 938. The district court should not have decided the question of whether a reasonable consumer would have been misled based on its own evaluation, but should have appropriately left the question of whether consumers so misled were

6

reasonable to be answered by the trier of fact after expert discovery and the presentation of evidence. The District Court's determination that no reasonable consumers could be deceived in this manner as a matter of law, was clearly in error at this stage in the proceedings. ER 10; *Schippell v. Johnson & Johnson Consumer Inc.*, No. EDCV 23-410 JGB (SHKx), 2023 U.S. Dist. LEXIS 139184 at *32-33 (C.D. Cal. Aug. 7, 2023).

## STANDARD OF REVIEW

"A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Williams,* 552 F.3d at 938 (quoting and citing *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007)). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Where a Plaintiff has alleged a cognizable legal theory, dismissal is not appropriate. *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 965 (9th Cir. 2018). With respect to UCL and CLRA claims in particular, because of the analysis involved with such claims, including the "reasonable consumer test," it is only "the rare situation in which granting a motion to dismiss is appropriate." *Williams,* 552 F.3d at 939.

Denial of leave to amend on a motion to dismiss is reviewed for abuse of discretion. *U.S. ex rel. Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048 (9th Cir. 2001). "Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment." *Peterson v. Mazda Motor of America, Inc.*, 44 F.Supp.3d 965, 968-69 (C.D. Cal. 2014) (citing *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003)).

## ARGUMENT

### I.      A Statement Need Not Be Factually False to be Misleading.

The district court erred in finding that a statement that is "technically true" cannot be misleading to reasonable consumers as a matter of law. ER 10. It is well established in the Ninth Circuit that technical truth is not a defense to a plausible allegation that a statement would be misleading or deceptive to reasonable consumers. *Williams,* 552 F.3d at 938 ("The California Supreme Court has recognized 'that these laws prohibit . . . advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive the public.'") (citing and quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002) and *Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985)). California state courts have long recognized this well-settled principle, explaining that what matters is not Defendant's definition of terms but in fact what the reasonable consumer would *understand* from the placement of the language on the label. *See, e.g., Nagel v.*

*Twin Labs., Inc.*, 109 Cal. App. 4th 39, 54 (Cal. Ct. App. 2003) ("In a consumer interest action such as this one, the appropriate consideration is not what the defendant's own policies allow, but whether the list of ingredients on the product labels and Twin Labs' Web site would mislead a reasonable consumer."); *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 807 (Cal. Ct. App. 2006)( "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable.") (quoting *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332–333 (Cal. Ct. App. 1998)).

Here, the district court found the challenged statements to be "carefully worded" and "technically true." ER 10. But whether a lawyer or judge, carefully parsing the language, would understand the meaning of the traceability statement placed on the packaging ("traceable from the farms into our factory") to be that the products' cocoa was not itself traceable has no bearing on whether the words were "actually misleading" or "had a capacity, likelihood, or tendency to deceive." *Kasky*, 27 Cal. 4th at 951 (quoting *Leoni*, 39 Cal. 3d at 626).

The Ninth Circuit has previously reversed dismissal in cases where a technically true statement was plausibly pled as misleading to reasonable consumers. In *Moore,* 966 F.3d at 1012, the Ninth Circuit held that consumers had adequately alleged that "prescription pet food," which required a prescription to be

9

purchased, was misleading in implying that "such food has been subject to government inspection and oversight, and has medicinal and drug properties." It was factually true that the "prescription" pet food required a prescription from a veterinarian to purchase. *Id*. at 1015. Nonetheless, the labeling on the food and the prescription requirement was found to be a plausible affirmative misrepresentation, *i.e*., that the food was different in its regulation and medicinal properties from non-prescription pet food. *Id*. at 1021.

Similarly, in *Davidson v. Kimberly-Clark Corp.*, the company argued that its statement that the wipes were "flushable" was factually true because the wipes would not cause damage to pipes if flushed. *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 965 (9th Cir. 2018). The court found this assertion of truth "extraneous" because the plausible consumer fraud theory was that consumers would be misled into thinking that the wipes would disintegrate and disperse if flushed. *Id*. The question was whether the reasonable consumer would believe that the wipes would disintegrate from the use of the word "flushable," not whether the statement was literally true in some other sense. *Id*. at 964-5. So too here: the appropriate question is whether reasonable consumers would believe that the product so labeled contained traceable, certified cocoa, not whether it was factually true that Mars purchases 24% of its volume in certified cocoa.

Just as in *Moore* and *Davidson*, the district court here committed reversible legal error in assuming that because the challenged statement was technically true, reasonable consumers could not be misled as a matter of law.  As Plaintiff alleged, Mars put this statement on the packaging of a line of products specifically marketed using fair trade language to imply to the consumer that the products they were purchasing contained traceable, certified cocoa.  ER 149 (SAC ¶ 46).  None of the cocoa in the products was in fact traceable at the point of sale nor was it guaranteed to contain any certified cocoa.  ER 150 (SAC ¶ 45).

## II.   The Placement of the Misrepresentation on the Label Deceived Reasonable Consumers Like Ms. Myers Into Believing that the Dove Dark Chocolate Products Contained Cocoa Traceable to Certified Farms, and Differed from Mars's Other Products.

Plaintiff alleged that the language that stated that Mars bought cocoa that was traceable from certified farms deceived her into thinking that the Dove Dark Chocolate products contained traceable and certified cocoa. ER 149- 50 (SAC ¶¶ 45, 48).  Plaintiff also alleged that the fact that the Dove Dark Chocolate products were labeled as traceable while the other Mars and Dove products were not so labeled deceived her into thinking that those products contained certified cocoa.[1]

---

[1] Plaintiff was not the only consumer so deceived. *See* "Is There Slavery in your Chocolate," https://thewriteending.com/is-there-slavery-in-your-chocolate/ ("There's a whole row of fair trade chocolate brands at Meijer, and I'm sure your local grocery store has options as well–if you take the time to look. My current favorite is the silky smooth Dove dark chocolate, which is Rainforest Alliance Certified.").

(ER 149-150 (SAC ¶¶ 46, 48). The district court erred in finding that Mars's statement was not an affirmative misrepresentation.

> **A.** **The District Court Erred in Failing to Take into Account that the Difference in Labeling Would Deceive a Reasonable Consumer into Thinking that Dove Dark Chocolate Products Materially Differed From Mars's Other Chocolates by Containing Certified Cocoa.**

The statements at issue here, by their placement on some products and not others, indicate to a reasonable consumer that the Dove Dark Chocolate line of products was made using certified cocoa. ER 149-50 (SAC ¶¶ 46, 48). In reality, the source of the cocoa for these products did not differ from those in Mars's general cocoa mix and other Mars chocolate products. Mars admits that they were not traceable. Plaintiff has plausibly alleged that at best 24% of Mars's Dark Chocolate could claim to be certified and none of which is traceable from the product back to the farm. Indeed, many of the Dove Dark Chocolate products likely contained no certified cocoa at all. Thus, the purposely distinctive statements on their packaging were deceptive and misleading to reasonable consumers.[2]

---

[2] Ms. Myers alleged, and no one has contested, that reasonable consumers care about such claims. ER 138 (SAC ¶¶6-7) ("64% of global consumers say they choose brands because of their stand on social issues"). The California Supreme Court has repeatedly recognized the importance of misleading claims of this nature. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 969 (2002) ("For a significant segment of the buying public, labor practices do matter in making consumer

Under California law, placement and context matters. For example, in *Salazar v. Walmart, Inc.*, the court held that the defendant's use of the term "white baking chips" was misleading when placed on a product sold in the chocolate aisle next to products containing chocolate. 83 Cal. App. 5th 561, 569 (Cal Ct. App. 2022) ("A reasonable consumer might know there are white chocolate chips used for baking while not knowing that white-colored baking chips that do not contain white chocolate exist. When viewed in that context, a reasonable consumer could reasonably be misled to believe that the chips are white chocolate chips. . ."). The court in that case found that the allegations, given the placement of the chips, were sufficient to continue with discovery; whether a reasonable consumer was deceived or misled into believing that the chips contain white chocolate is not properly resolved at the pleading stage. *Id.* at 570.

Similarly, in a case where Rite Aid represented that specific medicine was "'rapid release' but failed to qualify that statement with the fact that relief would be no more 'rapid' than that provided by defendant's non-rapid release products," the allegations were sufficient to support a claim that Rite Aid violated the UCL and CLRA. *Bailey v. Rite Aid Corp*., No. 18-CV-06926-YGR, 2019 WL 4260394,

---

choices."); *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 328 (2011) ("To some consumers, processes and places of origin matter. . . . Whether a diamond is conflict free may matter to the fiancée who wishes not to think of supporting bloodshed and human rights violations . . . .")

at *7 (N.D. Cal. Sept. 9, 2019). The court found that because the premium "rapid release" products were not any faster than the regular, cheaper Rite Aid products, the consumer was not getting what he had expected in paying the premium. *Id.*

Finally, marketing a specific line as "pure and natural" as opposed to other lines owned by the same company implicitly represents to the consumer that the product is a premium product that differs from the other products. *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *1 (N.D. Cal. Dec. 10, 2013) ("Defendant markets [Huggies Pure & Natural Diapers] as "pure & natural," . . . The front of the packaging also informs the consumer, without qualification, that the diapers are made of "soft organic cotton." . . . This marketing is an attempt to contrast the "pure & natural" diapers with Defendant's other, conventional diaper offerings."). In that case, the court found that the difference in packaging was plausibly alleged to be deceptive where the diapers "[did] not differ materially" from other Huggies products. *Id.* at *1-2. In that case, there were at least minor differences intended to make small portions of the diapers more "natural." *Id.* at *2-3. Here, the Dove Dark Chocolate products contain the exact same mix of cocoa (24% of which is certified and none of which is traceable from the product back to the farm) as other Mars chocolate products. ER 120 (Mars's Mot. to Dismiss at 12:8-16). Not even *minor* differences between the Dove Dark Chocolate products and Mars's other products exist.

14

**B. The Labeling of These Products with "Certified Cocoa, Traceable from the Farms to Our Factory" Misled Reasonable Consumers Into Thinking the Products Contained Ingredients They Did Not Contain.**

Plaintiff Myers adequately alleged that she was deceived into thinking that the Dove Dark Chocolate products contained traceable, certified cocoa. Mars admits that *none* of the cocoa is traceable at the point of sale, and only 24% of the cocoa it purchases is certified, ER 120 (Mars's Mot. to Dismiss at 12:8-16); ER 210 (citing Mars's website statements), making it likely that many of the Dove Dark Chocolate products contain no certified cocoa whatsoever. Plaintiff Myers was misled as to the actual ingredients of the product she was willing to pay a premium for in order to avoid consuming chocolate produced by slave labor.

As discussed, a literally true statement can still be misleading. Reasonable consumers are not expected to be versed in "the process of [a product's] preparation or manufacture," to distinguish the difference. *Skinner v. Ken's Foods, Inc.*, 53 Cal. App. 5th 938, 949 (Cal Ct. App. 2020) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (Cal. Ct. App. 2006)); *see also Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 509-10 (Cal. Ct. App. 2003) (holding a reasonable consumer need not be exceptionally sophisticated, or "wary or suspicious of advertising claims").

For example, where a product suggests that it has been made in the U.S.A., it is no defense that this is true, in that it was made in the United States, if

15

components were in significant part also not made in the United States. *Colgan*, 135 Cal. App. 4th at 672 (affirming summary adjudication for the plaintiff on this basis); *see also Skinner*, 53 Cal. App. 5th at 949 (products that tout being made with olive oil, even if technically true, could be deceptive if they were predominantly made with other oils). Here, the misleading statement is even more egregious. Defendant advertises to consumers that it buys cocoa from certified and traceable farms. In fact for many consumers, *nothing* in their purchase whatsoever would be made with certified or traceable cocoa.

Notwithstanding Mars's unqualified assertion, any certified cocoa is by far the vast *minority* of Mars's cocoa. Under the district court's rule, Mars could successfully shield itself from liability by purchasing a single traceable bean and deploying the careful wording here. That is clearly not the law, and reasonable consumers could easily be misled by a statement such as Mars's. *See e.g.*, *Mantikas v. Kellogg Co*., 910 F.3d 633, 638 (2d Cir. 2018) (statement "made with whole grain" is misleading where it is not a primary ingredient; and a rule that "it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present—would validate highly deceptive advertising and labeling. Such a rule would permit Defendant to lead consumers to believe its Cheez-Its were made of whole grain so long as the crackers contained an iota of whole grain, along with 99.999% white flour."). As a further example, it would be

no serious defense to a UCL claim against a used car dealer that its statements "We buy certified, inspected and fully traceable vehicles" is technically true, while in fact, the vast majority of its vehicles are uncertified, untraceable cars from salvage yards and chop shops.

A reasonable consumer could be misled by statements like those at issue here. Compare this case to the line of cases holding that products advertised as "All Natural" but which contain synthetic ingredients are plausibly misleading to the reasonable consumer. *See*, *e.g*., *Williams*, 552 F.3d at 938-9; *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *Bohac v. Gen. Mills, Inc.*, No. 12–cv–05280–WHO, 2014 WL 1266848, at \*4 (N.D. Cal. Mar. 26, 2014); *Surzyn v. Diamond Foods, Inc*., No: C 14–0136 SBA, 2014 WL 2212216, at \*3 (N.D. Cal. May 28, 2014); *Garrison v. Whole Foods Mkt. Grp., Inc*., Case No. 13–cv–05222–VC, 2014 WL 2451290, at \*3 (N.D. Cal. June 2, 2014). In those cases, courts have repeatedly held that (1) even though "all natural" is an ambiguous phrase susceptible to multiple interpretations, a reasonable consumer could nonetheless be plausibly misled by its use; and (2) such language is plausibly misleading even when it appears alongside an ingredient list clarifying a product's contents. *See*, *e.g*., *Williams*, 552 F.3d at 939-40 ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list

17

in small print on the side of the box."). The idea presented here of "traceability" and "certification" is less ambiguous than the comparatively metaphysical idea of "naturalness" in *Williams*. Moreover, the Dove labels contained no fine print with the potential to dispel mistaken assumptions and clarify the product's actual contents (*i.e.*, chocolate that was not traceable to certified farms).[3]

Just as the plaintiffs in the "all natural" line of cases were acting reasonably in believing the products they purchased contained natural ingredients, Myers had a reasonable belief that the Dove Dark Chocolate products contained traceable, certified cocoa, based on Mars's representations. In fact, at the point of sale, none of the cocoa remains traceable and no product is guaranteed to have any particular quantum of certified cocoa. ER 149 (SAC ¶ 45).

### III. The Allegations Were Sufficiently Specific to Satisfy the Plausibility Standard.

The lower court erred in its conclusion that the allegations were not sufficiently specific in asserting that a reasonable consumer would share Ms.

---

[3] Even when there is fine print, a typical or reasonable consumer is not expected to be sophisticated enough to read or understand it. *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). The company argued that the ingredient list cured the statement that the product had no trans-fat because it listed hydrogenated vegetable oil; this Court disagreed and found that a reasonable consumer could plausibly still be deceived. *Id.* ("It is far from clear that typical consumers understand that a product containing partially hydrogenated vegetable oil necessarily has trans fat, so even if an ingredient list has a curative effect in some cases, it might not here.").

Myers's interpretation of the label. ER 10. The complaint specifically alleged that the affirmative words on the label were misleading to a reasonable consumer. ER 149 (SAC ¶¶ 45, 46). The complaint made clear why the label was misleading: "A reasonable consumer would be misled, as Ms. Myers was, into thinking the product labeled 'traceable from the farm into our factory' is traceable and contains certified, ethically sourced beans. A reasonable consumer would not expect that once the beans are in 'our factory' that Mars abandons tracing or segregating the beans while making the products, and that there is no meaningful difference between the products labeled as traceable and those that are not." *Id*.

These allegations are sufficiently specific and put the company on notice of the factual bases for Ms. Myers's claims. In evaluating sufficient specificity, the standard under the CLRA is that plaintiffs allege "the basic premise of 'what is false or misleading about a statement, and why.'" *Moore,* 966 F.3d at 1019. There is no further requirement that the complaint allege a specific percentage of consumers that would be deceived or contain further proof of why the assumption is reasonable. Plaintiff need not allege that all reasonable consumers would be misled by Mars's representations, only that Plaintiff's belief is one reasonable interpretation of Defendant's statements. *Schippell*, 2023 U.S. Dist. LEXIS 139184 at *32-33.

**A.    The Correct Standard on A Motion to Dismiss is Plausibility of the Allegations.**

It is well-established that to survive a motion to dismiss, a complaint "does not need detailed factual allegations," but instead only needs enough factual allegations "to raise a right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). A suit may proceed to discovery if it alleges "enough facts to state a claim to relief that is *plausible* on its face." *Id.* at 570 (emphasis added). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard on a motion to dismiss in a CLRA or UCL case is simply whether it is plausible that the reasonable consumer would be deceived. *Reid*, 780 F.3d at 959. "Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss." *Ham v. Hain Celestial Group, Inc.,* 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *see also Orshan v. Apple Inc.*, 804 F. App'x 675 (9th Cir. 2020) ("Whether a particular business practice could mislead reasonable consumers is usually a question of fact for the jury."); *Williams*, 552 F.3d at 938;  *Hitt v. Arizona Beverage Co., LLC*, No. 08cv809 WQH (POR), 2009 WL 449190, at *7 (S.D. Cal. Feb. 4, 2009). California state courts agree that these questions cannot be determined at the demurrer stage. *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35

(Cal. Ct. App. 2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer."); *People v. McKale*, 25 Cal.3d 626, 635 (1979) ("What constitutes 'unfair competition' or 'unfair or fraudulent business practice' under any given set of circumstances is a question of fact… the essential test being whether the public is likely to be deceived…"). The burden on plaintiffs to survive a motion to dismiss is much lighter than the burden to survive a motion for summary judgment. *See, e.g., Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 483 (7th Cir. 2020).

### B. Ms. Myers Adequately Alleged that the Affirmative Misrepresentation Misled Her and Would Mislead a Reasonable Consumer.

Under California law, a "reasonable consumer" is "an ordinary consumer acting reasonably under the circumstances. Such a consumer need not be exceptionally acute and sophisticated, nor must they necessarily be wary or suspicious of advertising claims." *Salazar*, 83 Cal. App. 5th at 566; *accord Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *Williams*, 552 F.3d at 938.

Myers's allegations, listed here, are more than sufficient to establish the plausibility of her claim that the statement on the package was misleading and deceptive to both her and other reasonable consumers: (1) "Mars' claim on its DOVE Dark Chocolate bars that those products' beans are 'traceable from the farms into

21

our factories' is misleading because a reasonable consumer like Ms. Myers would assume that this statement meant the product was made with traceable, certified beans," ER 149 (SAC ¶ 45); (2) "Mars admits that it labels DOVE Dark Chocolate products differently than the rest of its products, so that only select packages have 'We buy cocoa from Rainforest Alliance Certified[TM] farms, traceable from the farms into our factory.' Thus, a reasonable consumer would assume the difference in packaging and representations for this line meant there was some meaningful difference in the content of the bars," ER 149 (SAC ¶ 46); (3) "A reasonable consumer would be misled, as Ms. Myers was, into thinking the product labeled 'traceable from the farm into the factory' is traceable and contained certified, ethically sourced beans," ER 150 (SAC ¶ 48); and (4) "A reasonable consumer would not expect that once the beans are in 'our factory' that Mars abandons tracing or segregating the beans while making the products, and that there is no meaningful difference between the products labeled as traceable and those that are not." ER 150 (SAC ¶ 48).

The allegations in this case are similar to those in *Gardner v. StarKist Co*. In that case, plaintiffs alleged that the defendant engaged in a campaign that led consumers to believe that its tuna products met a higher standard for sustainability, traceability, and dolphin safety than was legally required. *Gardner v. StarKist Co.*, 418 F. Supp. 3d 443, 450 (N.D. Cal. 2019). The campaign involved the use of a

22

distinctive mark and public statements regarding the safety of its tuna products. *Id*. at 450-51. The court found, however, that there was no way the defendant's claims regarding animal welfare and sustainability could be true, given the fishing techniques that it used. *Id*. at 456. The court found that the plaintiffs adequately alleged that they, reasonable consumers, were actually deceived by the use of the mark and the public statements, and would not have paid a premium for the defendant's products had they known its statements and labels were deceptive. *Id*. at 458-9; *see also Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 WL 94265 at *2-3 (N.D. Cal. January 5, 2010) ("Greenlist" label on Windex products would deceive reasonable consumers into thinking such products had been certified as environmentally friendly). So too here: Myers has pointed to specific instances that demonstrate that she, as a reasonable consumer, was misled by Mars's packaging and would not have purchased the Dove Dark Chocolate products absent Mars's false and misleading assertions re: traceability. ER 139, 140-41, 149-50 (SAC ¶¶ 9, 15, 45-48). Like the *Gardner* plaintiffs, Myers plausibly alleges that she herself relied on Mars's representations, that she purchased Dove Dark Chocolate products based on those representations, and that she was harmed when she learned that Mars's representations were false. *Gardner*, 418 F. Supp 3d at 459. Therefore, as in *Gardner*, her case should survive a motion to dismiss.

In short, the District Court erred in holding that no reasonable consumer could be misled by a product label reading "traceable from the farms" to assume that the cocoa contained therein was indeed "traceable." ER 8, 10. The facts as pled are more than sufficient to satisfy the plausibility standard.

### C. Specific Evidence Supporting Plaintiff's Claims is Not Required at the Pleading Stage.

California law does not require plaintiffs to allege extrinsic evidence in the complaint, such as consumer surveys or expert reports, to state a claim of false or misleading advertising or representation under the UCL or CLRA. Rather, "the primary evidence in a false advertising case is the advertising itself." *Williams*, 552 F.3d at 938 (citing *Brockey v. Moore,* 107 Cal. App. 4th 86, 100 (Cal. Ct. App. 2003)). One of the state law cases the District court relied on, *Colgan*, 135 Cal. App. 4th at 681-2, holds that even at the summary judgment stage, California case law "reject[s the] view that a plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation... [W]ith regard to the showing of deception, the primary evidence in a false advertising case is the advertising itself." (internal quotations omitted). *See also Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal 2018), *Lambert v. Nutraceutical Corp.*, 2020 U.S. Dist. LEXIS 6391 at *25 (C.D. Cal. Jan. 8, 2020) ("the absence of a consumer survey does not alone defeat materiality"). *Colgan* affirms that requiring extrinsic evidence to prove claims of false or

misleading advertising is a misinterpretation of state law. *Colgan*, 135 Cal. App. 4th at 681; *see also Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 642 F. Supp. 2d 957, 968-9 (N.D. Cal. 2008).

Following *Williams* and *Colgan*, courts in the Ninth Circuit explicitly do not require extrinsic evidence to support UCL and CLRA claims, even at the motion for summary judgment stage. *Spangler v. Nat'l College of Tech. Instruction*, No. 14-cv-3005 DMS (RBB), 2016 WL 11772280 at *7 (S.D. Cal. Oct. 24, 2016) ("Although extrinsic evidence may be admitted [at the summary judgment stage] to prove a representation is misleading, it is not required."); *Lytle v. Nutramax Labs., Inc.*, Case No. ED CV 19-0835 FMO (SPx), 2022 WL 1600047 at *5 (C.D. Cal. May 6, 2022) ("California courts have expressly rejected the view that a plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation.") (internal citation omitted). As extrinsic evidence is not required at summary judgment, there were no additional facts that needed to be alleged in the complaint about the reasonableness of consumers like Myers who assumed that the products they purchased were made with traceable, certified cocoa.

The district court erred in requiring anything more than the allegations Myers made, *i.e.*, that she was deceived into thinking that the product differed from Mars's other products and was made from traceable, certified cocoa, and that the reasonable

consumer would have been so misled.  That plausible allegation sufficiently put Mars on notice of the claims against it. Myers adequately states her UCL and CLRA claims against Mars.

## CONCLUSION

The dismissal of Mars's claims should be reversed and the case remanded for further proceedings.

Dated: September 13, 2023        By: s/ Catherine Sweetser
                                  Catherine Sweetser
                                  Attorney for Plaintiff-Appellant.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number 22-55930**

I am the attorney or self-represented party.

**This brief contains 6,306 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __s/ Catherine Sweetser_____ **Date** _September 13, 2023___
                Catherine Sweetser

27

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2023, I electronically filed the foregoing document APPELLANT'S OPENING BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I hereby certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: September 13, 2023          By: s/ Catherine Sweetser
                                       Catherine Sweetser

**ADDENDUM**

**STATUTORY ADDENDUM**

**CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750-1785**

**§ 1750**

This title may be cited as the Consumers Legal Remedies Act.

**§ 1751**

Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void.

**§ 1752**

The provisions of this title are not exclusive. The remedies provided herein for violation of any section of this title or for conduct proscribed by any section of this title shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law. Nothing in this title shall limit any other statutory or any common law rights of the Attorney General or any other person to bring class actions. Class actions by consumers brought under the specific provisions of Chapter 3 (commencing with Section 1770) of this title shall be governed exclusively by the provisions of Chapter 4 (commencing with Section 1780); however, this shall not be construed so as to deprive a consumer of any statutory or common law right to bring a class action without resort to this title. If any act or practice proscribed under this title also constitutes a cause of action in common law or a violation of another statute, the consumer may assert such common law or statutory cause of action under the procedures and with the remedies provided for in such law.

**§ 1753**

If any provision of this title or the application thereof to any person or circumstance is held to be unconstitutional, the remainder of the title and the application of such provision to other persons or circumstances shall not be affected thereby.

**§ 1754**

The provisions of this title shall not apply to any transaction which provides for the construction, sale, or construction and sale of an entire residence or all or part of a structure designed for commercial or industrial occupancy, with or without a parcel of real property or an interest therein, or for the sale of a lot or parcel of real property, including any site preparation incidental to such sale.

**§ 1755**

Nothing in this title shall apply to the owners or employees of any advertising medium, including, but not limited to, newspapers, magazines, broadcast stations, billboards and transit

ads, by whom any advertisement in violation of this title is published or disseminated, unless it is established that such owners or employees had knowledge of the deceptive methods, acts or practices declared to be unlawful by Section 1770.

### § 1756

The substantive and procedural provisions of this title shall only apply to actions filed on or after January 1, 1971.

### § 1760

This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

### § 1761

As used in this title:

a. "Goods" means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property.

b. "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.

c. "Person" means an individual, partnership, corporation, limited liability company, association, or other group, however organized.

d. "Consumer" means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes.

e. "Transaction" means an agreement between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement.

f. "Senior citizen" means a person who is 65 years of age or older.

g. "Disabled person" means any person who has a physical or mental impairment that substantially limits one or more major life activities.

h. "Home solicitation" means any transaction made at the consumer's primary residence, except those transactions initiated by the consumer. A consumer response to an advertisement is not a home solicitation.

1. As used in this subdivision, "physical or mental impairment" means any of the following:

A. Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss substantially affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs;

cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; or endocrine.

B.    Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. "Physical or mental impairment" includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech, and hearing impairment, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, and emotional illness.

2.    "Major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

## § 1770

a.    The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful:

1. Passing off goods or services as those of another.
2. Misrepresenting the source, sponsorship, approval, or certification of goods or services.
3. Misrepresenting the affiliation, connection, or association with, or certification by, another.
4. Using deceptive representations or designations of geographic origin in connection with goods or services.
5. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.
6. Representing that goods are original or new if they have deteriorated unreasonably or are altered, reconditioned, reclaimed, used, or secondhand.
7. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
8. Disparaging the goods, services, or business of another by false or misleading representation of fact.
9. Advertising goods or services with intent not to sell them as advertised.
10. Advertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity.
11. Advertising furniture without clearly indicating that it is unassembled if that is the case.
12. Advertising the price of unassembled furniture without clearly indicating the assembled price of that furniture if the same furniture is available assembled from the seller.
13. Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

14.     Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

15.     Representing that a part, replacement, or repair service is needed when it is not.

16.     Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

17.     Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

18.     Misrepresenting the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction with a consumer.

19.     Inserting an unconscionable provision in the contract.

20.     Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product. This subdivision shall not apply to in-store advertising by businesses that are open only to members or cooperative organizations organized pursuant to Division 3 (commencing with Section 12000) of Title 1 of the Corporations Code if more than 50 percent of purchases are made at the specific price set forth in the advertisement.

21.     Selling or leasing goods in violation of Chapter 4 (commencing with Section 1797.8) of Title 1.7.

22.

    A.     Disseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice first informing the person answering the telephone of the name of the caller or the organization being represented, and either the address or the telephone number of the caller, and without obtaining the consent of that person to listen to the prerecorded message.

    B.     This subdivision does not apply to a message disseminated to a business associate, customer, or other person having an established relationship with the person or organization making the call, to a call for the purpose of collecting an existing obligation, or to any call generated at the request of the recipient.

23.

    A.     The home solicitation, as defined in subdivision (h) of Section 1761, of a consumer who is a senior citizen where a loan or assessment is made encumbering the primary residence of that consumer for purposes of paying for home improvements and where the transaction is part of a pattern or practice in violation any of the following: (i) Subsection (h) or (i) of Section 1639 of Title 15 of the United States Code. (ii) Paragraph (1), (2), or (4) of subdivision (a) of Section 226.34 of Title 12 of the Code of Federal Regulations. (iii) Section 22684, 22685, 22686, or 22687 of the Financial Code. (iv) Section 5898.16, 5898.17, 5913, 5922, 5923, 5924, 5925, 5926, or 5940 of the Streets and Highways Code.

B.    A third party shall not be liable under this subdivision unless (i) there was an agency relationship between the party who engaged in home solicitation and the third party, or (ii) the third party had actual knowledge of, or participated in, the unfair or deceptive transaction. A third party who is a holder in due course under a home solicitation transaction shall not be liable under this subdivision.

24.

A.    Charging or receiving an unreasonable fee to prepare, aid, or advise any prospective applicant, applicant, or recipient in the procurement, maintenance, or securing of public social services.

B.    For purposes of this paragraph:

    i.   "Public social services" means those activities and functions of state and local government administered or supervised by the State Department of Health Care Services, the State Department of Public Health, or the State Department of Social Services, and involved in providing aid or services, or both, including health care services, and medical assistance, to those persons who, because of their economic circumstances or social condition, are in need of that aid or those services and may benefit from them.

    ii.   "Public social services" also includes activities and functions administered or supervised by the United States Department of Veterans Affairs or the California Department of Veterans Affairs involved in providing aid or services, or both, to veterans, including pension benefits.

    iii.   "Unreasonable fee" means a fee that is exorbitant and disproportionate to the services performed. Factors to be considered, if appropriate, in determining the reasonableness of a fee, are based on the circumstances existing at the time of the service and shall include, but not be limited to, all of the following:

        1.   The time and effort required.

        2.   The novelty and difficulty of the services.

        3.   The skill required to perform the services.

        4.   The nature and length of the professional relationship.

        5.   The experience, reputation, and ability of the person providing the services.

C.    This paragraph shall not apply to attorneys licensed to practice law in California, who are subject to the California Rules of Professional Conduct and to the mandatory fee arbitration provisions of Article 13 (commencing with Section 6200) of Chapter 4 of Division 3 of the Business and Professions Code, when the fees charged or received are for providing representation in administrative agency appeal proceedings or court proceedings for purposes of procuring, maintaining, or securing public social services on behalf of a person or group of persons.

25.

A.    Advertising or promoting any event, presentation, seminar, workshop, or other public gathering regarding veterans' benefits or entitlements that does not include the following statement in the same type size and font as the term "veteran" or any variation of that term:

      i. "I am not authorized to file an initial application for Veterans' Aid and Attendance benefits on your behalf, or to represent you before the Board of Veterans' Appeals within the United States Department of Veterans Affairs in any proceeding on any matter, including an application for those benefits. It would be illegal for me to accept a fee for preparing that application on your behalf." The requirements of this clause do not apply to a person licensed to act as an agent or attorney in proceedings before the Agency of Original Jurisdiction and the Board of Veterans' Appeals within the United States Department of Veterans Affairs when that person is offering those services at the advertised event.

      ii. The statement in clause (i) shall also be disseminated, both orally and in writing, at the beginning of any event, presentation, seminar, workshop, or public gathering regarding veterans' benefits or entitlements.

B. Advertising or promoting any event, presentation, seminar, workshop, or other public gathering regarding veterans' benefits or entitlements that is not sponsored by, or affiliated with, the United States Department of Veterans Affairs, the California Department of Veterans Affairs, or any other congressionally chartered or recognized organization of honorably discharged members of the Armed Forces of the United States, or any of their auxiliaries that does not include the following statement, in the same type size and font as the term "veteran" or the variation of that term:

"This event is not sponsored by, or affiliated with, the United States Department of Veterans Affairs, the California Department of Veterans Affairs, or any other congressionally chartered or recognized organization of honorably discharged members of the Armed Forces of the United States, or any of their auxiliaries. None of the insurance products promoted at this sales event are endorsed by those organizations, all of which offer free advice to veterans about how to qualify and apply for benefits."

      i. The statement in this subparagraph shall be disseminated, both orally and in writing, at the beginning of any event, presentation, seminar, workshop, or public gathering regarding veterans' benefits or entitlements.

      ii. The requirements of this subparagraph shall not apply in a case where the United States Department of Veterans Affairs, the California Department of Veterans Affairs, or other congressionally chartered or recognized organization of honorably discharged members of the Armed Forces of the United States, or any of their auxiliaries have granted written permission to the advertiser or promoter for the use of its name, symbol, or insignia to advertise or promote the event, presentation, seminar, workshop, or other public gathering.

26. Advertising, offering for sale, or selling a financial product that is illegal under state or federal law, including any cash payment for the assignment to a third party of the consumer's right to receive future pension or veteran's benefits.

27.  Representing that a product is made in California by using a Made in California label created pursuant to Section 12098.10 of the Government Code, unless the product complies with Section 12098.10 of the Government Code.

28.

    A.      Failing to include either of the following in a solicitation by a covered person, or an entity acting on behalf of a covered person, to a consumer for a consumer financial product or service:

      i.   The name of the covered person, and, if applicable, the entity acting on behalf of the covered person, and relevant contact information, including a mailing address and telephone number.

      ii.   The following disclosure statement in at least 18-point bold type and in the language in which the solicitation is drafted: "THIS IS AN ADVERTISEMENT. YOU ARE NOT REQUIRED TO MAKE ANY PAYMENT OR TAKE ANY OTHER ACTION IN RESPONSE TO THIS OFFER."

    B.      For purposes of this paragraph:

      i.   "Consumer financial product or service" has the same meaning as defined in Section 90005 of the Financial Code.

      ii.

          1.   "Covered person" has the same meaning as defined in Section 90005 of the Financial Code.

          2.   "Covered person" does not mean an entity exempt from Division 24 (commencing with Section 90000) of the Financial Code pursuant to Section 90002 of the Financial Code.

      iii.   "Solicitation" means an advertisement or marketing communication through writing or graphics that is directed to, or likely to give the impression of being directed to, an individually identified person, residence, or business location. "Solicitation" does not include any of the following:

          1.   Communication through a mass advertisement, including in a catalog, on a radio or television broadcast, or on a publicly accessible internet website, if that communication is not directed to, or is not likely to give the impression of being directed to, an individually identified person, residence, or business location.

          2.   Communication via a telephone, mail, or electronic communication that was initiated by a consumer.

          3.   A written credit or insurance solicitation that is subject to the disclosure requirements of subsection (d) of Section 1681m of Title 15 of the United States Code.

(b)      It is an unfair or deceptive act or practice for a mortgage broker or lender, directly or indirectly, to use a home improvement contractor to negotiate the terms of any loan that is secured, whether in whole or in part, by the residence of the borrower and that is used to finance a home improvement contract or any portion of a home improvement contract. For purposes of this subdivision, "mortgage broker or lender" includes a finance lender licensed pursuant to the California Financing Law (Division 9 (commencing with Section 22000) of the Financial Code), a residential mortgage lender licensed pursuant to the California Residential Mortgage Lending Act (Division 20 (commencing with Section 50000) of the Financial Code), or a real estate broker licensed under the Real Estate Law (Division 4 (commencing with Section 10000) of the Business and Professions Code).

2. This section shall not be construed to either authorize or prohibit a home improvement contractor from referring a consumer to a mortgage broker or lender by this subdivision. However, a home improvement contractor may refer a consumer to a mortgage lender or broker if that referral does not violate Section 7157 of the Business and Professions Code or any other law. A mortgage lender or broker may purchase an executed home improvement contract if that purchase does not violate Section 7157 of the Business and Professions Code or any other law. Nothing in this paragraph shall have any effect on the application of Chapter 1 (commencing with Section 1801) of Title 2 to a home improvement transaction or the financing of a home improvement transaction.

## § 1780

a.      Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following:

1.      Actual damages, but in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000).
2.      An order enjoining the methods, acts, or practices.
3.      Restitution of property.
4.      Punitive damages.
5.      Any other relief that the court deems proper.

b.

1.      Any consumer who is a senior citizen or a disabled person, as defined in subdivisions (f) and (g) of Section 1761, as part of an action under subdivision (a), may seek and be awarded, in addition to the remedies specified therein, up to five thousand dollars ($5,000) where the trier of fact does all of the following:
   A.  Finds that the consumer has suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.
   B.  Makes an affirmative finding in regard to one or more of the factors set forth in subdivision (b) of Section 3345.
   C.  Finds that an additional award is appropriate.
2.      Judgment in a class action by senior citizens or disabled persons under Section 1781 may award each class member that additional award if the trier of fact has made the foregoing findings.

c.      Whenever it is proven by a preponderance of the evidence that a defendant has engaged in conduct in violation of paragraph (24) of subdivision (a) of Section 1770, in addition to all other remedies otherwise provided in this section, the court shall award treble actual damages to the plaintiff. This subdivision shall not apply to attorneys licensed to practice law in California, who are subject to the California Rules of Professional Conduct and to the mandatory fee arbitration provisions of Article 13 (commencing with Section 6200) of Chapter 4 of Division 3 of the Business and Professions Code, when the fees charged or received are for providing representation in administrative agency appeal proceedings or court proceedings for purposes of

procuring, maintaining, or securing public social services on behalf of a person or group of persons.

d.     An action under subdivision (a) or (b) may be commenced in the county in which the person against whom it is brought resides, has his or her principal place of business, or is doing business, or in the county where the transaction or any substantial portion thereof occurred. In any action subject to this section, concurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action. If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice.

e.     The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section. Reasonable attorney's fees may be awarded to a prevailing defendant upon a finding by the court that the plaintiff's prosecution of the action was not in good faith.

### § 1781

a.     Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780.

b.     The court shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist:

    1.     It is impracticable to bring all members of the class before the court.
    2.     The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members.
    3.     The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class.
    4.     The representative plaintiffs will fairly and adequately protect the interests of the class.

c.     If notice of the time and place of the hearing is served upon the other parties at least 10 days prior thereto, the court shall hold a hearing, upon motion of any party to the action which is supported by affidavit of any person or persons having knowledge of the facts, to determine if any of the following apply to the action:

    1.     A class action pursuant to subdivision (b) is proper.
    2.     Published notice pursuant to subdivision (d) is necessary to adjudicate the claims of the class.
    3.     The action is without merit or there is no defense to the action.

A motion based upon Section 437c of the Code of Civil Procedure shall not be granted in any action commenced as a class action pursuant to subdivision (a).

d.      If the action is permitted as a class action, the court may direct either party to notify each member of the class of the action. The party required to serve notice may, with the consent of the court, if personal notification is unreasonably expensive or it appears that all members of the class cannot be notified personally, give notice as prescribed herein by publication in accordance with Section 6064 of the Government Code in a newspaper of general circulation in the county in which the transaction occurred.

e.      The notice required by subdivision (d) shall include the following:
  1.      The court will exclude the member notified from the class if he so requests by a specified date.
  2.      The judgment, whether favorable or not, will include all members who do not request exclusion.
  3.      Any member who does not request exclusion, may, if he desires, enter an appearance through counsel.

f.      A class action shall not be dismissed, settled, or compromised without the approval of the court, and notice of the proposed dismissal, settlement, or compromise shall be given in such manner as the court directs to each member who was given notice pursuant to subdivision (d) and did not request exclusion.

g.      The judgment in a class action shall describe those to whom the notice was directed and who have not requested exclusion and those the court finds to be members of the class. The best possible notice of the judgment shall be given in such manner as the court directs to each member who was personally served with notice pursuant to subdivision (d) and did not request exclusion.

**§ 1782**

a.      Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:

  1.      Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
  2.      Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California.

b.      Except as provided in subdivision (c), no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice.

A-10

c.     No action for damages may be maintained under Section 1781 upon a showing by a person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 that all of the following exist:

    1.     All consumers similarly situated have been identified, or a reasonable effort to identify such other consumers has been made.

    2.     All consumers so identified have been notified that upon their request the person shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.

    3.     The correction, repair, replacement, or other remedy requested by the consumers has been, or, in a reasonable time, shall be, given.

    4.     The person has ceased from engaging, or if immediate cessation is impossible or unreasonably expensive under the circumstances, the person will, within a reasonable time, cease to engage, in the methods, act, or practices.

d.     An action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a). Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages. The appropriate provisions of subdivision (b) or (c) shall be applicable if the complaint for injunctive relief is amended to request damages.

e.     Attempts to comply with this section by a person receiving a demand shall be construed to be an offer to compromise and shall be inadmissible as evidence pursuant to Section 1152 of the Evidence Code. Furthermore, these attempts to comply with a demand shall not be considered an admission of engaging in an act or practice declared unlawful by Section 1770. Evidence of compliance or attempts to comply with this section may be introduced by a defendant for the purpose of establishing good faith or to show compliance with this section.

## § 1783

Any action brought under the specific provisions of Section 1770 shall be commenced not more than three years from the date of the commission of such method, act, or practice.

## § 1784

No award of damages may be given in any action based on a method, act, or practice declared to be unlawful by Section 1770 if the person alleged to have employed or committed such method, act, or practice (a) proves that such violation was not intentional and resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any such error and (b) makes an appropriate correction, repair or replacement or other remedy of the goods and services according to the provisions of subdivisions (b) and (c) of Section 1782.

## CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200-17210

### § 17200

As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

### § 17201

As used in this chapter, the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons.

### § 17201.5

As used in this chapter:
a.      "Board within the Department of Consumer Affairs" includes any commission, bureau, division, or other similarly constituted agency within the Department of Consumer Affairs.
b.      "Local consumer affairs agency" means and includes any city or county body which primarily provides consumer protection services.

### § 17202

Notwithstanding Section 3369 of the Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition.

### § 17203

Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.

### § 17204

Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or a district attorney or by a county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or by a

city attorney of a city having a population in excess of 750,000, or by a county counsel of any county within which a city has a population in excess of 750,000, or by a city attorney in a city and county or, with the consent of the district attorney, by a city prosecutor in a city having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of a board, officer, person, corporation, or association, or by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.

### § 17205

Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state.

### § 17206

(a)      Any person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General, by any district attorney, by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, by any city attorney of a city having a population in excess of 750,000, or by a county counsel of any county within which a city has a population in excess of 750,000, by any city attorney of any city and county, or, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor, in any court of competent jurisdiction.

(b)      The court shall impose a civil penalty for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the following: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

(c)

1. If the action is brought by the Attorney General, one-half of the penalty collected shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the General Fund.
2. If the action is brought by a district attorney or county counsel, the penalty collected shall be paid to the treasurer of the county in which the judgment was entered.
3.
   A. Except as provided in subparagraph (B) and subdivision (e), if the action is brought by a city attorney or city prosecutor, one-half of the penalty collected shall be paid to the treasurer of the city in which the judgment was entered, and one-half to the treasurer of the county in which the judgment was entered.

A-13

      B.  If the action is brought by the City Attorney of San Diego, the penalty collected shall be paid to the treasurer of the City of San Diego.

   4.  The aforementioned funds shall be for the exclusive use by the Attorney General, the district attorney, the county counsel, and the city attorney for the enforcement of consumer protection laws.

(d)      The Unfair Competition Law Fund is hereby created as a special account within the General Fund in the State Treasury. The portion of penalties that is payable to the General Fund or to the Treasurer recovered by the Attorney General from an action or settlement of a claim made by the Attorney General pursuant to this chapter or Chapter 1 (commencing with Section 17500) of Part 3 shall be deposited into this fund. Moneys in this fund, upon appropriation by the Legislature, shall be used by the Attorney General to support investigations and prosecutions of California's consumer protection laws, including implementation of judgments obtained from such prosecutions or investigations and other activities which are in furtherance of this chapter or Chapter 1 (commencing with Section 17500) of Part 3. Notwithstanding Section 13340 of the Government Code, any civil penalties deposited in the fund pursuant to the National Mortgage Settlement, as provided in Section 12531 of the Government Code, are continuously appropriated to the Department of Justice for the purpose of offsetting General Fund costs incurred by the Department of Justice.

(e)      If the action is brought at the request of a board within the Department of Consumer Affairs or a local consumer affairs agency, the court shall determine the reasonable expenses incurred by the board or local agency in the investigation and prosecution of the action.

Before any penalty collected is paid out pursuant to subdivision (c), the amount of any reasonable expenses incurred by the board shall be paid to the Treasurer for deposit in the special fund of the board described in Section 205. If the board has no such special fund, the moneys shall be paid to the Treasurer. The amount of any reasonable expenses incurred by a local consumer affairs agency shall be paid to the general fund of the municipality or county that funds the local agency.

(f) If the action is brought by a city attorney of a city and county, the entire amount of the penalty collected shall be paid to the treasurer of the city and county in which the judgment was entered for the exclusive use by the city attorney for the enforcement of consumer protection laws. However, if the action is brought by a city attorney of a city and county for the purposes of civil enforcement pursuant to Section 17980 of the Health and Safety Code or Article 3 (commencing with Section 11570) of Chapter 10 of Division 10 of the Health and Safety Code, either the penalty collected shall be paid entirely to the treasurer of the city and county in which the judgment was entered or, upon the request of the city attorney, the court may order that up to one-half of the penalty, under court supervision and approval, be paid for the purpose of restoring, maintaining, or enhancing the premises that were the subject of the action, and that the balance of the penalty be paid to the treasurer of the city and county.

**§ 17206.1**

(a)

      1. In addition to any liability for a civil penalty pursuant to Section 17206, a person who violates this chapter, and the act or acts of unfair competition are perpetrated against one or more senior citizens or disabled persons, may be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which may be assessed and recovered in a civil action as prescribed in Section 17206.

      2. Subject to subdivision (d), any civil penalty shall be paid as prescribed by subdivisions (b) and (c) of Section 17206.

(b)     As used in this section, the following terms have the following meanings:

      1.   "Senior citizen" means a person who is 65 years of age or older.

      2.   "Disabled person" means a person who has a physical or mental impairment that substantially limits one or more major life activities.

        A.  As used in this subdivision, "physical or mental impairment" means any of the following:

           i.   A physiological disorder or condition, cosmetic disfigurement, or anatomical loss substantially affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; or endocrine.

           ii.  A mental or psychological disorder, including intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

"Physical or mental impairment" includes, but is not limited to, diseases and conditions including orthopedic, visual, speech, and hearing impairment, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, intellectual disability, and emotional illness.

        B.  "Major life activities" means functions that include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(c)     In determining whether to impose a civil penalty pursuant to subdivision (a) and the amount thereof, the court shall consider, in addition to any other appropriate factors, the extent to which one or more of the following factors are present:

      1.   Whether the defendant knew or should have known that his or her conduct was directed to one or more senior citizens or disabled persons.

      2.   Whether the defendant's conduct caused one or more senior citizens or disabled persons to suffer any of the following: loss or encumbrance of a primary residence, principal employment, or source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person.

      3.   Whether one or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because

of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

(d)     A court of competent jurisdiction hearing an action pursuant to this section may make orders and judgments as necessary to restore to a senior citizen or disabled person money or property, real or personal that may have been acquired by means of a violation of this chapter. Restitution ordered pursuant to this subdivision shall be given priority over recovery of a civil penalty designated by the court as imposed pursuant to subdivision (a), but shall not be given priority over a civil penalty imposed pursuant to subdivision (a) of Section 17206. If the court determines that full restitution cannot be made to those senior citizens or disabled persons, either at the time of judgment or by a future date determined by the court, then restitution under this subdivision shall be made on a pro rata basis depending on the amount of loss.

### § 17206.2

(a)

1. In addition to any liability for a civil penalty pursuant to Section 17206, a person who violates this chapter, if the act or acts of unfair competition are perpetrated against one or more service members or veterans, may be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which may be assessed and recovered in a civil action as prescribed in Section 17206.
2. Any civil penalty shall be paid as prescribed by subdivisions (b) and (c) of Section 17206.

(b) As used in this section, the following terms have the following meanings:
1. "Service member" means a person who is a member of the Army, Navy, Air Force, Marine Corps, Space Force, or Coast Guard, or the active militia of this state.
2. "Veteran" means a person who was formerly a service member.

### § 17207

(a)     Any person who intentionally violates any injunction prohibiting unfair competition issued pursuant to Section 17203 shall be liable for a civil penalty not to exceed six thousand dollars ($6,000) for each violation. Where the conduct constituting a violation is of a continuing nature, each day of that conduct is a separate and distinct violation. In determining the amount of the civil penalty, the court shall consider all relevant circumstances, including, but not limited to, the extent of the harm caused by the conduct constituting a violation, the nature and persistence of that conduct, the length of time over which the conduct occurred, the assets, liabilities, and net worth of the person, whether corporate or individual, and any corrective action taken by the defendant.

(b)     The civil penalty prescribed by this section shall be assessed and recovered in a civil action brought in any county in which the violation occurs or where the injunction was issued in

the name of the people of the State of California by the Attorney General or by any district attorney, any county counsel of any county within which a city has a population in excess of 750,000 or any county counsel that is authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney in any court of competent jurisdiction within the attorney's jurisdiction without regard to the county from which the original injunction was issued. An action brought pursuant to this section to recover civil penalties shall take precedence over all civil matters on the calendar of the court except those matters to which equal precedence on the calendar is granted by law.

(c)     If such an action is brought by the Attorney General, one-half of the penalty collected pursuant to this section shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the State Treasurer. If brought by a district attorney or county counsel the entire amount of the penalty collected shall be paid to the treasurer of the county in which the judgment is entered. If brought by a city attorney or city prosecutor, one-half of the penalty shall be paid to the treasurer of the county in which the judgment was entered and one-half to the city, except that if the action was brought by a city attorney of a city and county the entire amount of the penalty collected shall be paid to the treasurer of the city and county in which the judgment is entered.

(d)     If the action is brought at the request of a board within the Department of Consumer Affairs or a local consumer affairs agency, the court shall determine the reasonable expenses incurred by the board or local agency in the investigation and prosecution of the action.

Before any penalty collected is paid out pursuant to subdivision (c), the amount of the reasonable expenses incurred by the board shall be paid to the State Treasurer for deposit in the special fund of the board described in Section 205. If the board has no such special fund, the moneys shall be paid to the State Treasurer. The amount of the reasonable expenses incurred by a local consumer affairs agency shall be paid to the general fund of the municipality or county which funds the local agency.

### § 17208

Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section shall be revived by its enactment.

### § 17209

If a violation of this chapter is alleged or the application or construction of this chapter is in issue in any proceeding in the Supreme Court of California, a state court of appeal, or the appellate division of a superior court, each person filing any brief or petition with the court in that proceeding shall serve, within three days of filing with the court, a copy of that brief or petition on the Attorney General, directed to the attention of the Consumer Law Section at a service address designated on the Attorney General's official Web site for service of papers under this section or, if no service address is designated, at the Attorney General's office in San Francisco, California, and on the district attorney of the county in which the lower court action or

proceeding was originally filed. Upon the Attorney General's or district attorney's request, each person who has filed any other document, including all or a portion of the appellate record, with the court in addition to a brief or petition shall provide a copy of that document without charge to the Attorney General or the district attorney within five days of the request. The time for service may be extended by the Chief Justice or presiding justice or judge for good cause shown. No judgment or relief, temporary or permanent, shall be granted or opinion issued until proof of service of the brief or petition on the Attorney General and district attorney is filed with the court.

## § 17210

(a)      For purposes of this section, "hotel" means any hotel, motel, bed and breakfast inn, or other similar transient lodging establishment, but it does not include any residential hotel as defined in Section 50519 of the Health and Safety Code. "Innkeeper" means the owner or operator of a hotel, or the duly authorized agent or employee of the owner or operator.

(b)      For purposes of this section, "handbill" means, and is specifically limited to, any tangible commercial solicitation to guests of the hotel urging that they patronize any commercial enterprise.

(c)      Every person (hereinafter "distributor") engages in unfair competition for purposes of this chapter who deposits, places, throws, scatters, casts, or otherwise distributes any handbill to any individual guest rooms in any hotel, including, but not limited to, placing, throwing, leaving, or attaching any handbill adjacent to, upon, or underneath any guest room door, doorknob, or guest room entryway, where either the innkeeper has expressed objection to handbill distribution, either orally to the distributor or by the posting of a sign or other notice in a conspicuous place within the lobby area and at all points of access from the exterior of the premises to guest room areas indicating that handbill distribution is prohibited, or the distributor has received written notice pursuant to subdivision (e) that the innkeeper has expressed objection to the distribution of handbills to guest rooms in the hotel.

(d)      Every person (hereinafter "contractor") engages in unfair competition for purposes of this chapter who causes or directs any other person, firm, business, or entity to distribute, or cause the distribution of, any handbill to any individual guest rooms in any hotel in violation of subdivision (c) of this section, if the contractor has received written notice from the innkeeper objecting to the distribution of handbills to individual guest rooms in the hotel.

(e)      Every contractor who causes or directs any distributor to distribute, or cause the distribution of, any handbills to any individual guest rooms in any hotel, if the contractor has received written notice from the innkeeper or from any other contractor or intermediary pursuant to this subdivision, objecting to the distribution of handbills to individual guest rooms in the hotel has failed to provide a written copy of that notice to each distributor prior to the commencement of distribution of handbills by the distributor or by any person hired or retained by the distributor for that purpose, or, within 24 hours following the receipt of the notice by the contractor if received after the commencement of distribution, and has failed to instruct and demand any distributor to not distribute, or to cease the distribution of, the handbills to individual guest rooms in any hotel for which such a notice has been received is in violation of this section.

A-18

(f)     Any written notice given, or caused to be given, by the innkeeper pursuant to or required by any provision of this section shall be deemed to be in full force and effect until such time as the notice is revoked in writing.

(g)     Nothing in this section shall be deemed to prohibit the distribution of a handbill to guest rooms in any hotel where the distribution has been requested or approved in writing by the innkeeper, or to any individual guest room when the occupant thereof has affirmatively requested or approved the distribution of the handbill during the duration of the guest's occupancy.